<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JAMES HAND,**<br><br>   *Petitioner,*<br><br> v.<br><br>**CAROLYN W. COLVIN,**<br>**Acting Commissioner of Social Security,**<br><br>   *Defendant.* | **Civil Action No. 14-6242**<br><br>**OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

  **THIS MATTER** comes before the Court on Petitioner James Hand's ("Petitioner") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of supplemental security income benefits to Petitioner. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

 **I.**  **STANDARD OF REVIEW AND APPLICABLE LAW**

  **A. Standard of Review**

  This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if substantial evidence supports the decision. 42 U.S.C. § 405(g); <u>Markle v. Barnhart</u>, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." <u>Newell v. Comm'r of Soc. Sec.</u>, 347 F.3d 541, 545 (3d Cir. 2003).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review. The reviewing court should not "weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the Commissioner's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972).

### B. Five-Step Sequential Analysis of Adult Disability

In order to determine whether an adult claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, it must be determined whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If it is found that the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is severe

only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must ask whether the claimant has "residual functional capacity" such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503. The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

## II. BACKGROUND

### A. Procedural History

This case arises out of Petitioner's May 10, 2011, application for disability insurance benefits. Tr. 133-39. This application was denied initially on September 6, 2011, and on reconsideration on November 17, 2011. Tr. 49-61, 76-80, 82-84. Petitioner then sought review before an administrative law judge, which occurred on October 22, 2012, at a hearing before the Honorable Barbara Dunn (the "ALJ"). Tr. 85-86. The ALJ issued an opinion on November 30,

2012, finding that Petitioner was not disabled under the standards for adult disability. Tr. 14-26. The Appeals Court ("AC") granted Petitioner's request for review. Tr. 128-32. On August 6, 2014, the AC issued a new decision, again finding that Petitioner was not disabled. Tr. 4-8. On April 15, 2015, Petitioner timely filed the instant action. Compl., Dkt. No. 1.

### B. Factual Background

Petitioner is a fifty-four year old man who alleged disability due to anxiety, depression, headaches, and herniated discs with pain radiating through his arms. Tr. 3, 156, 208. Despite these conditions, Petitioner is still able to perform household activities, go shopping, visit friends, and attend church every Sunday. Tr. 173-75. Petitioner was taking Lexapro for anxiety and receiving psychiatric treatment until he lost health insurance coverage when he quit his job of twenty-three years as a nurse's aide in January 2011. Tr. 31, 220, 223.

In 2005, Petitioner was involved in a motor vehicle accident that resulted in neck pain. Tr. 215. He received treatment, but his pain persisted and caused headaches. Id. Petitioner ultimately had an MRI on his cervical spine performed in March 2006, which showed a broad-based central herniation at C4-5 and to lesser extents at C5-6 and C6-7. Tr. 208.

Petitioner presented to Martin Mayer, M.D., for a psychiatric evaluation in February 2010. Tr. 210-11. Petitioner was disturbed about a recent error he made at work. Tr. 210. Dr. Mayer diagnosed him with an anxiety disorder and prescribed 5 milligrams of Lexapro, which was increased to 10 milligrams in September 2010 when Petitioner reported increased irritability. Tr. 211, 213.

Petitioner underwent a consultative physical evaluation by Betty Vekhnis, M.D., in February 2010, at the request of the state agency. Tr. 215-16. Petitioner noted that he had degenerative arthritis for which he received cortisone shots in 2006 and 2008. Tr. 215. He also

reported left knee, neck, and low back pain, some resulting from his 2005 motor vehicle accident. Id. Dr. Vekhnis observed that Petitioner walked without an assistive device, could walk on his heels and toes, and could squat. Id. Petitioner had full range of motion in his cervical spine. Id. The straight leg-raising test was negative both supine and sitting, despite lumbar spine tenderness at L4-5. Tr. 216. Dr. Vekhnis' impression was of a 49-year-old right-handed male with chronic neck and low back pain who did not use an assistive device for ambulation, and who had normal hand functions for fine and gross motor manipulations. Id.

In August 2011, seven months after Petitioner lost his job, he underwent a mental status examination by Ernesto Perdomo, Ph.D., at the state agency's request. Tr. 220-23. Dr. Perdomo diagnosed recurrent major depression, without psychotic features secondary to back problems and the job loss. Tr. 223. He assessed Petitioner with a Global Assessment of Functioning of "around 70," and felt that Petitioner's dominant problems were his back and chronic pain. Tr. 223.

That same month, State agency physician Deogracias Bustos, M.D., also reviewed Petitioner's medical evidence. Tr. 55. He noted that Petitioner retained the capacity to lift 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; push and pull within the lifting restrictions; frequently climb ramps and stairs, balance, crouch, and stoop; occasionally kneel and crawl; never climb ladders, ropes, and scaffolds; and avoid concentrated exposure to extreme heat and cold wetness, humidity, vibration, fumes, odors, dust, gasses, poor ventilation, and hazards. Tr. 55-57. David Schneider, M.D., affirmed Dr. Bustos' opinion in November 2011. Tr. 62, 68-69.

Ellen Gara, Psy.D., a state agency psychologist, reviewed Petitioner's claim for benefits in September 2011, and opined that Petitioner retained the ability to perform semi-skilled light work despite moderate limitations caused by mental impairments. Tr. 58-60. In November 2011,

5

Michael D'Adamo, Ph.D., reaffirmed Dr. Gara's opinion. Tr. 67.

Vocational Expert Rocco J. Meoloa ("VE") testified at the supplemental administrative hearing. Tr. 42-43. The ALJ asked the VE to assume an individual who could perform simple, routine work and lift 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; push and pull within the lifting restrictions; frequently climb ramps and stairs, balance, crouch, and stoop; occasionally kneel and crawl; never climb ladders, ropes, and scaffolds; and avoid concentrated exposure to extreme heat and cold, wetness, humidity, vibration, fumes, odors, dust, gases, poor ventilation, and hazards. Id. The VE testified that, despite those limitations, such an individual could perform work as a ticketer, an inspector packer, and a decal applier. Tr. 43. When asked to additionally assume that such individual had limited use of the upper extremities, the VE testified that the representative jobs named could still be performed. Tr. 44.

### C. The ALJ's Decision

The ALJ found that Petitioner had not engaged in substantial gainful activity during the relevant period, from January 28, 2011 to May 7, 2012. Tr. 19. The ALJ determined that Petitioner had severe impairments consisting of a cervical herniated disc with upper extremity radicular symptoms, anxiety disorder, and depression. Id. The ALJ concluded that Petitioner's impairments did not meet or medically equal the criteria of any impairment in the Listings. Id.

The ALJ next found that Petitioner retained the RFC to perform a reduced range of light work with certain exceptions. Tr. 20. The ALJ noted that there was no evidence for nerve root involvement; no cervical tenderness or motion limitations; some lumbar tenderness; negative findings for leg raising, muscle strength, reflexes and sensory examination; and no clinical support for a residual functioning capacity greater than assessed. Tr. 20-21. The ALJ considered

Petitioner's subjective complaints, but found that his reported symptoms were not entirely credible. Tr. 20-21. The ALJ's final RFC was as follows:

> [T]he claimant has the residual functioning capacity to perform light work as defined in 20 CFR 404.1567(b) except: the claimant is limited to routine, simple jobs; <u>cannot</u> stand or walk for six hours during an eight-hour workday; <u>cannot</u> sit for six hours during an eight hour workday; is preclude from climbing ladders, ropes, and scaffolds; can occasionally kneel and crawl; and must avoid concentrated exposure to extreme temperatures, wetness and vibrations.

<u>Id.</u> (emphasis added). The RFC does not specify the amount of time Petitioner could perform any exertional limitations. <u>See id.</u> It also contradicts the question asked to the VE in one respect: it notes that that Petitioner "cannot" stand or walk for 6 hours during an 8-hour workday or sit for 6 hours during an 8 hour workday. <u>Compare</u> Tr. 20-21 (stating Petitioner "cannot" stand for 6 hours), <u>with</u> Tr. 42 (asking about hypothetical person who "can" stand for 6 hours). The ALJ did not indicate that he rejected any part of the VE's findings. Tr. 19-23.

The ALJ next found that Petitioner could not perform his past relevant work. Tr. 21-22. At the fifth step, however, the ALJ concluded that, considering Petitioner's age, education, work experience, and RFC, he could perform other work that existed in significant numbers in the national economy. Tr. 22. In reaching this finding, the ALJ relied on the VE's testimony and found (as the VE did) that Petitioner could perform three jobs that require "light work"[1]—a ticketer, inspector/packer, and decal applier—all of which existed in sufficient aggregate numbers in the national economy. Tr. 22-23. The ALJ accordingly concluded that Petitioner was not disabled within the meaning of the Act and denied his claim for disability benefits. Tr. 23.

---

[1] "Light work" means work that "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." <u>Elliott v. Comm'r of Soc. Sec.</u>, 295 F. App'x 507, 508 (3d Cir. 2008) (quoting Social Security Ruling 83-10).

### D. Appeals Council Review

On appeal, the AC agreed with most of the ALJ's findings under the five-step evaluation process, except for the ALJ's RFC finding. Tr. 4-6. The AC agreed that Petitioner could perform range of light work, but disagreed with the finding that he "cannot" stand, walk, or sit for 6 hours in an 8-hour workday. Tr. 6. The AC found that the ALJ's erroneous finding stemmed from two errors of law: First, the AC found that ALJ failed to discuss the amount of time Petitioner could perform these activities as required by 20 C.F.R. § 404.1545 and Social Security Ruling ("SSR") 96-8p. Tr. 6. Second, the ALJ decision did not evaluate the State agency's physician and psychological assessments that Petitioner could perform a range of light work as required by 20 C.F.R. §§ 404.1527(e) and 416.927 (e) and SSR 96-6p. Tr. 6.

The AC did not find any error with the hypothetical questions posed to the VE. According to the AC, the questions reflected the Petitioner's correct RFC. Id. at 6. That is, the questions addressed how long the hypothetical person could stand, walk, or sit in an 8-hour workday and the limitations accurately reflected the State agency's physicians and psychological consultants' assessments. Id. The AC also found that these assessments were supported by medical evidence and therefore gave them great weight. Id. The AC therefore found that "the claimant's RFC for the period at issue consists of all of the limitations posed to the [VE] in the [ALJ's] hypothetical question." Id. The AC found that, once the RFC was modified, the ALJ's remaining findings were supported, including the finding that Petitioner's subjective claims were not entirely credible and that he was not disabled. Tr. 6-7.

### III. ANALYSIS

Petitioner offers one main argument in support of remand. He argues that the ALJ's RFC and pain evaluations were supported by substantial evidence. Therefore, he argues, the AC

committed two errors. First, it should not have rejected the ALJ's finding that Petitioner could not sit, stand, or walk for 6 hours in an 8-hour day. Second, it could not reject the ALJ's RFC but accept the ALJ's pain evaluation. The Court disagrees.[2]

First, the AC's analysis comports with the requirements for evaluating a claimant's RFC. As the relevant regulation explains, "[y]our residual functional capacity is the most you <u>can still do</u> despite your limitations." 20 C.F.R. § 404.1545(a)(1) (emphasis added). As the AC noted, the AC's modified RFC correctly explains what Petitioner was still able to do, whereas the ALJ's RFC only explained what Petitioner could not do. The AC correctly modified the RFC to correct the ALJ's error.

Second, the modified finding that Petitioner could sit, stand, or walk for 6 hours is supported by substantial evidence. As the AC found, the state agency physicians' findings provide such evidence. Dr. Bustos reviewed Petitioner's medical records, including his reasonable ability to walk, and concluded that Petitioner had an RFC for light work with environmental restrictions. Tr. 53. Jobs that fall into the "light work" category "require[] a good deal of walking or standing," or "sitting most of the time," up to approximately 6 hours in an 8-hour workday. <u>See</u> 20 C.F.R. § 404.1567(b); <u>Elliott</u>, 295 F. App'x at 508 ("The ALJ's observation that the full range of light work requires standing or walking for six hours per day is consistent with his conclusion that [Petitioner]

---

[2] Petitioner also argues that the AC was required to remand the case once it realized that the ALJ's RFC did not match the hypotheticals posed to the VE. That is incorrect. An Appeals Council has the authority to remand a case or render its own decision. <u>See</u> 20 C.F.R. § 404.979. "The Appeals Council may affirm, modify or reverse the administrative law judge hearing decision or it may adopt, modify or reject a recommended decision. If the Appeals Council issues its own decision, it will base its decision on the preponderance of the evidence." <u>Id.</u> Here, the AC plainly had the authority to modify the ALJ's decision without remand, and (as explained below) properly rendered a decision based on the preponderance of evidence that was in the available record. While Petitioner contends that the AC's decision not to remand "ignore[s] every applicable Third Circuit precedent," Pet'r's Br. at 12, Dkt. No. 11, he does not support that proposition with any case law.

possessed the RFC to perform light work with modifications . . . ."). Dr. Schneider, who reviewed Petitioner's reconsideration request for Dr. Bustos' findings, confirmed the finding, noting Petitioner did not allege worsening of his condition and finding that he could sit, stand, and work for about 6 hours in an 8-hour workday. Tr. 62, 68. Similarly, Dr. Vekhnis, a consultative examiner, noted Petitioner's back pain but concluded that he could walk without assistance and did not have much ambulatory difficulty. Tr. 216. These findings belie Petitioner's claim that "[t]he State Agency doctors made no such references [to Petitioner's ability to sit, stand, or walk] and gave no such reasons for their RFC." Pet'r's Br. at 23. Nor has Petitioner directed the Court to any medical evidence indicating that he could not sit, stand, or walk for 6 hours in an 8-hour workday.

Third, the revised RFC is consistent with the AC's finding that Petitioner's subjective complaints of pain were not completely credible—a finding that is supported by substantial evidence. The AC found that Petitioner's impairments could reasonably cause his symptoms, but that the intensity, persistence, and limited effects "are not credible to the extent they are inconsistent with" Petitioner's RFC. See Tr. 7; see also Tr. 21. This finding is supported by substantial evidence because Petitioner's subjective claim that he cannot sit, stand, or walk for 6 hours in an 8-hour day is contrary to the medical evidence and opinions described above. See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 148 (3d Cir. 2007) ("A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC.").

Fourth, the revised RFC matches the hypothetical questions posed to the VE, so the AC had no reason to disturb the VE's findings. Petitioner does not dispute that they are identical. He argues instead that the case must be remanded because the ALJ's original RFC did not match the

questions posed to the VE.  Petitioner does not explain why this fact amounts to reversible error.  The Court holds that it does not.  The hypotheticals accurately reflected Petitioner's limitations and residual function.  Therefore, the VE's finding that a person with such characteristics could find jobs in the national economy applied equally to Petitioner.  The AC properly accepted the VE's findings.

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's denial of benefits to Petitioner is supported by substantial evidence.  The Commissioner's decision is **AFFIRMED.**

Date: September 28, 2016                         */s Madeline Cox Arleo*
                                                 **MADELINE COX ARLEO**
                                                 **UNITED STATES DISTRICT JUDGE**